ALBERT H. SAYLES, trustee, & another *vs.* EVELYN M. HALL.

Dukes County.　October 23, 1911. — November 29, 1911.

Present: RUGG, C. J., HAMMOND, SHELDON, & DeCOURCY, JJ.

*Equitable Restrictions.*

An enforceable restriction in a deed of land, which limits the buildings to be erected on the premises to " a dwelling house to be used exclusively as a residence for a private family " and the necessary outbuildings, is violated by letting rooms in a dwelling house on the land to boarders and lodgers averaging in number about twelve at a time and staying for periods of about two weeks.

BILL IN EQUITY, filed in the Superior Court on August 3, 1911, by the holder of the legal title and the beneficial owner of the lot numbered 34 on Ocean Avenue in Oak Bluffs against the owner of the adjoining lot numbered 36 on the same avenue to enforce the equitable restriction which is quoted below.

In the Superior Court the case was submitted upon an agreed statement of facts to *White*, J., who with the consent of the parties reserved it upon the pleadings and the agreed statement of facts for determination by this court, such final decree to be entered as justice and equity might require.

The agreed facts were as follows:

On August 3, 1867, the Oak Bluffs Land and Wharf Company, a corporation, being seised in fee of a tract of land in that part of Edgartown now comprised in the town of Oak Bluffs, caused the

tract to be laid out into house lots, streets, avenues and parks, according to a plan which was recorded with the register of deeds for the county of Dukes County, and the lots were placed upon the market for sale. The deeds prepared by the company and used by it in all its conveyances of all the lots situated on Ocean Avenue in Oak Bluffs were the same in form and contained certain conditions which included the following : " The said grantee shall within one year from the date hereof cause to be erected on the granted premises, a dwelling house, to be used exclusively as a residence, for a private family, and no other buildings except the necessary out buildings requisite, and to be used exclusively for domestic purposes, shall ever be erected thereon."

The plaintiffs and the defendant held through mesne conveyances under the same form of deed. Dwelling houses were erected on the lots within one year by the original grantees. The dwelling on lot No. 34 had been used up to the time of the agreed statement as a residence for a private family. The dwelling on lot 36 was used up to June, 1908, as a residence for a private family. On June 9, 1908, the defendant purchased lot No. 36. Both the plaintiffs and the defendant used the dwellings on the lots only during the summer and autumn seasons. During the season of 1908 the defendant kept three boarders in the dwelling on lot No. 36. During the summer of 1909 the defendant let her dwelling house on lot No. 36 to a private family. During the autumn of 1909 the defendant kept two or three boarders in the dwelling on lot No. 36. During the season of 1910 and 1911 the defendant occupied the dwelling house as her residence and kept boarders and let rooms in the dwelling house on lot No. 36, the boarders and roomers averaging in number about twelve persons at any one time, and the average stay of the individual boarders or roomers being two weeks, excepting as to a few who remained throughout the season. About one half the roomers and boarders kept by the defendant in the dwelling house on lot No. 36 were friends of the defendant, and for that reason were only charged about the exact cost of their keep. The other boarders and roomers kept by the defendant in the dwelling on lot No. 36 paid the full price. The defendant did not place any sign on the dwelling on lot No. 36 or advertise

in any way or make known to the public that she kept boarders or roomers in the dwelling on lot No. 36. The first knowledge that the plaintiffs had that the defendant furnished lodgings as aforesaid was in the autumn of 1910, just after the close of the autumn season. In the latter part of June, 1911, the plaintiffs for the first time were convinced that the defendant was furnishing board and rooms as aforesaid. On July 31, 1911, the plaintiffs, by their attorneys, requested the defendant to cease furnishing rooms and food to people for hire and reward, and notified the defendant that the plaintiffs felt that such use of the dwelling at No. 36 was a violation of the conditions and restrictions in the original deed of the Oak Bluffs Land and Wharf Company.

Three dwelling houses, numbered respectively 11, 13 and 15 Ocean Avenue, were used at divers times by the occupants for the purpose of letting rooms and furnishing meals, and the dwelling house No. 11 Ocean Avenue has been used for such purpose for more than twenty years. There were no signs or advertisements on any of the three dwellings at Nos. 11, 13 and 15 Ocean Avenue, or anything to indicate that boarders or lodgers would be provided for at these houses. The plaintiffs had no knowledge that the houses numbered 11, 13 and 15 Ocean Avenue ever were used for the purpose of furnishing people with board and lodging, until the time of agreeing to these facts. In a large number of the dwellings on streets and avenues other than Ocean Avenue boarders and lodgers have been kept for many years in Oak Bluffs, and the original deeds of the lots where these dwellings are situated contained the same conditions as the original deed of lots 36 and 34. The plaintiffs had no knowledge that these dwellings were so used until the time of the agreement of the facts. On all the lots on Ocean Avenue substantial dwelling houses were erected and used as required by the deeds excepting on lots 2 and 4, on which twenty years or more before the filing of the bill there was erected a clubhouse which was maintained up to about ten years before the filing of the bill, when it was destroyed and a private residence was erected thereon. With that exception, Ocean Avenue always has been a very high class residential district.

The case was submitted on briefs.

*E. L. McManus & G. H. Lucey*, for the plaintiffs.

*B. T. Hillman*, for the defendant.

DeCOURCY, J.   The defendant's deed was in the form adopted for the conveyance of all the lots on Ocean Avenue by the Oak Bluffs Land and Wharf Company, the predecessor in title of the plaintiffs and the defendant.   One of these deeds was before this court in the case of *Hopkins* v. *Smith*, 162 Mass. 444.   As was said in that case, " the conditions and restrictions . . . were inserted for the benefit of purchasers from that company, who took deeds subject to these conditions and restrictions, and for the benefit of the grantees of such purchasers, and . . . therefore the restrictions can be enforced in equity by and against such grantees."

We are of opinion that the keeping of boarders and letting of rooms to the extent set forth in the agreed facts is a violation of the restriction in the defendant's deed limiting the buildings upon the premises to " a dwelling-house to be used exclusively as a residence for a private family," and the necessary outbuildings.   *Gannett* v. *Albree*, 103 Mass. 372.   *Skillman* v. *Smatheurst*, 12 Dick. 1.   *Hobson* v. *Tulloch*, [1898] 1 Ch. 424.

No such change in the character of the neighborhood is shown as to render applicable the doctrine laid down in *Jackson* v. *Stevenson*, 156 Mass. 496.   While it appears that the occupants of the houses numbered 11, 13 and 15 Ocean Avenue have let rooms and furnished meals at divers times, there were no signs displayed to indicate that lodgers or boarders were provided for. Further, these are but three of the forty-four dwelling houses on the avenue; and the agreed facts expressly state that Ocean Avenue always has been a very high class residential district. Still less are the plaintiffs to be deprived of a remedy by reason of changed conditions on other streets and avenues, due to the fact that a number of owners have accommodated boarders and lodgers in apparent violation of the provisions of their deeds. So far as Ocean Avenue property is concerned there has been shown no such change of conditions affecting its character and use as to warrant a finding that the restrictions have ceased to be binding.   *Stewart* v. *Finkelstone*, 206 Mass. 28.

The defense of laches is not sustained.   The defendant did

not make known to the public by sign or advertisement that she kept boarders or lodgers.   The plaintiffs acquired their first knowledge of the fact after the autumn season of 1910; and it is agreed that they were convinced for the first time in the latter part of June, 1911, that the defendant was furnishing board and rooms.   Notice to the defendant and suit promptly followed. And the plaintiffs had no knowledge that any of the other houses on Ocean Avenue or on other streets were used for furnishing people with board and lodging until the agreed statement of facts was prepared.   *Bacon* v. *Sandberg*, 179 Mass. 396.   *Codman* v. *Bradley*, 201 Mass. 361.

*Decree for the plaintiffs.*