ANTHONY ASTE *vs.* PUTNAM'S HOTEL COMPANY.
SAME *vs.* SAME.

Suffolk.    October 18, 1923. — December 21, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, & PIERCE, JJ.

*Landlord and Tenant,* Construction of lease, Covenant as to assignment.  *Evidence,* Competency, Relevancy and materiality.  *Practice, Civil,* Verdict, Exceptions.

Under a lease in writing of real estate which contains a covenant, that the lessee " or others having its estate in the premises will not assign this Lease . . . without the consent of the said lessor or of those having its estate in the premises first being obtained in writing allowing thereof," and also a provision reserving to the lessor a right of entry for breach of the covenant, it is not necessary, after the lessor has given consent in writing to one assignment of the lease, to procure his consent to subsequent assignments.

Where a request for a ruling contains three propositions, one of which is an incorrect statement of the law, an exception to the denial of the request will be overruled.

At the trial of an action of contract by the owner of a restaurant and cafeteria, alleging himself to be a tenant of certain premises as assignee of a lease, for damages alleged to have resulted from an unwarranted interference by the defendant, the owner and lessor, with the plaintiff's rights as tenant, the judge subject to an exception by the defendant permitted a real estate agent to testify that he had a prospective purchaser for the restaurant and cafeteria, provided the purchaser could have a lease from the defendant, and that the defendant told him, at a time when the plaintiff was claiming to be a tenant as an assignee of the lease, that he had leased the premises to a druggist.  There also was evidence as to similar statements by the defendant to another witness as to prospective purchasers of the business and evidence of notices to quit, given by the defendant to persons occupying the premises under the plaintiff, for the alleged reason that the premises had been relet by the defendant to other persons, tending to show a course of conduct on the part of the defendant interfering with the plaintiff's rights as a tenant.  *Held,* that the exception must be overruled.

At the trial of the action above described, evidence was admissible tending to show that the plaintiff placed certain persons in charge of the premises and in the active management of the business being conducted thereon and furnished to them cash for the payment of rent, such evidence tending to show that those persons were the plaintiff's agents.

TORT, with a declaration as amended setting forth an alleged unlawful entry by the defendant upon premises occupied by the plaintiff as a tenant at 282 and 286 Huntington Avenue in Boston, and a conversion by the defendant to its own use of personal property of the plaintiff thereon. Writ dated May 31, 1921. Also, an action of

CONTRACT for violation by the defendant of alleged rights of the defendant to quiet enjoyment of the premises above described, and for damages resulting from an ouster therefrom. Writ dated May 31, 1921.

In the Superior Court the actions were tried together before *King,* J.

In the action of tort the defendant asked for the following ruling:

" That the notice given by the defendant to the auctioneer that it claimed that certain fixtures were a part of the realty was not such a tortious taking as to constitute conversion of such fixtures, so as to relieve the plaintiff of the necessity of making a demand. But even if all said fixtures were not a part of the realty, that the window and door screens, the linoleum on the café floor, the mirrors in the restaurant, the large electric light domes and fixtures, the awnings, ventilator fan and motor, built-in ice boxes, closets and shelving, hot water heater, sinks, and all plumbing, gas and electric fixtures which had been originally attached to the realty by the defendant were not such trade fixtures as could have been removed by the plaintiff but were part of the realty."

A ruling asked for by the defendant in the action of contract and exceptions saved to the admission of certain evidence are described in the opinion.

The defendant also saved an exception to a ruling by the trial judge " that where consent had been given to one assignment of the lease, no other consent was necessary,

and that there was no necessity to get written consent thereafter."

The trial judge submitted special questions to the jury which, with their answers thereto, were as follows:

" 1. Who was tenant and in occupation of defendant's premises at the time of the alleged conversion of personal property? "  The jury answered: " Anthony Aste."

" 2. Was any property of the plaintiff converted by the defendant? "  The jury answered: " Yes."

" 3. If yes, specify what it was that was so converted and of what value."  The jury answered: " Hot water heater, $1,100; linoleum, $50; shelving, $50; double sink and fixtures, $100; gas and electric fixtures, $200; total, $1,500."

The jury found for the plaintiff in the action of tort in the sum of $1,500, and in the action of contract in the sum of $3,600.  The defendant alleged exceptions.

*C. C. Barton*, for the defendant.

*C. W. Lavers*, for the plaintiff.

DeCourcy, J.  The plaintiff brought two actions, and obtained a verdict in each.  One was in tort, for the alleged conversion of certain restaurant fixtures and furnishings, the property of the plaintiff.  The defendant's only exception in that case was to the refusal of the trial judge to give a certain requested ruling; and this was waived at the argument.  The second action was in contract, for violation of the plaintiff's rights to quiet enjoyment of, and an alleged ouster from, certain premises; the plaintiff claiming as assignee of a certain lease, according to the first count, and by virtue of some sufficient contract of tenancy according to the second count.  A recital of the facts, as the jury could find them, is necessary, before discussing the exceptions.

About April 5, 1920, the defendant sold out to the Napoli Cafeteria, Inc., the fixtures and going business of a restaurant at 286 Huntington Avenue, Boston, and gave to it a lease of the restaurant premises and of the adjacent vacant store; which store the Napoli Cafeteria, Inc., equipped as a cafeteria.  The lease was for a term of ten years from April 12, 1920, at a rental payable $300 monthly in advance on the

twelfth of each month. It contained a covenant that the lessee " or others having its estate in the premises will not assign this Lease . . . without the consent of the said lessor or of those having its estate in the premises first being obtained in writing allowing thereof; " with a right of entry reserved for a breach of the covenant. The Napoli Cafeteria, Inc., entered into the premises April 12, 1920; installed numerous fixtures; and made various improvements suitable to the business to be conducted. On October 25, 1920, the lease was assigned to the De Angelis Company with the lessor's written consent. The De Angelis Company assigned to one Samuel Present on February 5, 1921, the lessor's written consent being again obtained. The same day Present executed to one Fopiano and Rosa Giolitto a mortgage of the fixtures, furnishings, merchandise and good will of the restaurant and cafeteria, which had been transferred to him by a bill of sale dated January 29, 1921, (not in evidence) from the De Angelis Company. On March 1, 1921, Fopiano assigned his rights in this mortgage to Mrs. Giolitto.

Present paid the rent due February 12, 1921, but paid none thereafter, and ceased to be an active factor about three weeks after the assignment of the lease to him. About March 6, 1921, the Present mortgage was foreclosed, and at the sale the property covered by it was bid in by the plaintiff, apparently for Mrs. Giolitto, the mortgagee. The plaintiff at once placed Mr. and Mrs. Forfori in charge of the business. These persons had been about the premises since the beginning in various capacities. They had been interested in the De Angelis Company; Mr. Forfori had been chef during the Present proprietorship; and they had run the business after Present's retirement. Mrs. Forfori is the mother of the plaintiff. Mr. Forfori duly paid the March 12 rent by check and received a receipt from the defendant: but the money was in fact furnished by the plaintiff. Aste (the plaintiff) bought out Mrs. Giolitto, receiving a bill of sale dated March 22, 1921, of all the personal property upon the premises, " Meaning and intending hereby to transfer and convey all rights of property and tenancy which I have in the premises." He gave back to her a gen-

eral chattel mortgage of the said personal property. Thereafter the Forforis conducted the business, mainly in their own names, but actually in the plaintiff's behalf.

The April 12 rent was paid by Mrs. Forfori; $200 on the due date and the balance later in the month. The plaintiff furnished $150 of this. During April and May, 1921, there were various conversations with the defendant's treasurer, Putnam, with reference to the rent, the state of the business, the possibility of selling the restaurant and cafeteria, renewing the lease, etc., at which there were variously present Mr. and Mrs. Forfori, a real estate broker one Allen, the plaintiff Aste, his attorney Jeffery, and Putnam. These conferences reached no definite agreements, and on May 11, 1921, the defendant gave the Forforis written notice to vacate the premises in or within thirty days after May 12, 1921. The reason given was that the premises had been relet by the defendant to other persons. On May 14 a second notice was sent, giving fourteen days in which to vacate, stating the same reason and also " for non-payment of the rent due and payable on May 12, 1921." May 24, 1921, an auction sale was held to dispose of the furnishings and fixtures of the restaurant and cafeteria. Certain acts by the defendant at and about the time of this sale, together with said notices to quit, were declared on as constituting interferences with the plaintiff's rights as tenant.

The verdict in the contract suit necessarily involved a finding that the plaintiff was tenant of the premises at the time of the transactions in question. The jury also returned a special finding that he was a tenant at the time of the alleged conversion. The correctness of these findings is not open to review, on this record. The principal exception taken by the defendant was " to the ruling of the court that where consent had been given to one assignment of the lease, no other consent was necessary, and that there was no necessity to get written consent thereafter." This ruling was right. *Dumpor's Case,* 4 Co. 119. *Brummell* v. *Macpherson,* 14 Ves. 173. *Pennock* v. *Lyons,* 118 Mass. 92. *Murray* v. *Harway,* 56 N. Y. 337. *Reid* v. *Wiessner Brewing Co.* 88 Md. 234. The rule in its origin rested upon quite technical

reasoning concerning the nonapportionability of conditions. *Dumpor's Case, supra,* and see *Gannett* v. *Albree,* 103 Mass. 372, 374. Although the license to assign given the lessee in *Dumpor's Case* was a general permission to assign to any person, in both *Brummell* v. *Macpherson* and *Pennock* v. *Lyons* the lessor's consent was to assign to specified persons; and the rule was nevertheless applied that the consent discharged the condition. It is argued in the present case that it makes a difference that the covenant purports to bind the successors in title of the lessee, while that in *Pennock* v. *Lyons* was not broad enough to cover assigns. But in both *Dumpor's Case* and *Brummell* v. *Macpherson,* the covenants expressly bound the lessee's assigns. The further possibility that the covenant might run with the land against assigns even though not named — see *Spencer's Case,* 5 Co. 16; Woodfall, Land. & Ten. (16th ed.) 175; Tiffany Land. & Ten. § 152 i — precludes any feasibility of placing *Pennock* v. *Lyons* on any other than its obvious ground, that *Dumpor's Case* is fully accepted law in this Commonwealth.

A second exception was to the refusal to rule, " that under the foreclosure of mortgage given by Samuel Present wherein he mortgaged the good will of the business carried on by him, that on foreclosure of said mortgage the good will did not carry with it an assignment of any rights which said Present had under the lease in issue and that even if said good will carried with it an assignment of said Present's rights in said lease, said assignment would not be effective but would be null and void without the consent in writing of the defendant and that if the plaintiff was a tenant of the defendant that he was only a tenant at will." For the reasons already stated the second of the three propositions involved in this request could not be given. As this erroneous proposition was incorporated with the two others in the general ruling asked for, the failure to give the ruling furnishes no ground for exception. *Gardiner* v. *Brookline,* 181 Mass. 162. *Dempsey* v. *Goldstein Brothers Amusement Co.* 231 Mass. 461.

.. The exceptions to the admission of evidence may be disposed of briefly. There was no error in permitting the real estate agent, Allen, who had a prospective purchaser for

the restaurant and cafeteria provided he could have a lease, to testify that Putnam told him he had leased the premises to a druggist for $200 a month, and would not have a cafeteria restaurant there. The talk occurred in May, when the plaintiff claimed to hold as assignee of the lease. This conversation, and that with Rosa Forfori, as to prospective customers, tended to show a course of conduct on the part of the defendant, culminating in the notices to quit, which interfered with the plaintiff's rights as tenant under the covenants of the lease. The testimony of the plaintiff that he installed Mrs. Forfori and her mother to take charge of the property after the foreclosure sale, and that he furnished some cash for the payment of the rent, was admissible at east to show that the Forforis, who had the active management, were in fact his agents. Further, it does not appear that the substantial rights of the defendant were injuriously affected thereby, as the tenancy of the plaintiff was established by the jury, and is not before us for review.

*Exceptions overruled.*