HEALTHCO, INC. & another[1] *vs.* E & S REALTY ASSOCIATES
& another.

Norfolk. March 6, 1987. — August 13, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Landlord and Tenant*, Assignment of lease.

Failure of a commercial lessee to obtain prior written consent of the lessor
to an assignment of the lease, as the lease effective at that time expressly
required, constituted a breach of the lease. [702-703]

CIVIL ACTION commenced in the Superior Court Department
on October 22, 1982.

The case was heard by *John P. Forte*, J., sitting under
statutory authority.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Margaret J. Palladino* for the defendants.
*Alan D. Rose & Rosanna Sattler* (*Austin P. Montgomery,
III*, with them) for the plaintiffs.

NOLAN, J. The defendants, E & S Realty Associates (E &
S) and Samuel P. Avila, manager of E & S, appeal from a
judgment granting the plaintiffs, Healthco, Inc. (Healthco),
and H & M Laboratory Services, Inc. (H & M), declaratory
and injunctive relief relative to an action brought to determine
whether a lease between Healthco and H & M survived after
Healthco assigned its interest to H & M without obtaining the
consent of E & S. The judge granted the relief because he
concluded that E & S unreasonably withheld its consent to the
assignment of the lease by Healthco to H & M. We reverse.

We summarize the facts found by the judge. In 1967, Leon
Sherman, Robert Kanchuga, and Eliot Gordon established the

---

[1] H & M Laboratory Services, Inc.

Denthetics Dental Laboratory (Denthetics) at 161 Highland Avenue in Needham. Denthetics was and is in the business of manufacturing and selling dental prosthesis products such as crowns and bridges. Sherman, Kanchuga and Gordon leased the property from Eli Slotnick and Kenneth Epstein. Article XXI of the lease provided that the tenant could not assign the lease "without the written consent of the Landlord, which consent the Landlord shall not unreasonably withhold." In February, 1968, the three men assigned their lease to Denthetics. There was no change in the nature of the business or in personnel and the lessors consented.

Sometime prior to 1970, Slotnick and Epstein transferred the ownership of the real estate to the Needham Office Building Trust (trust). In 1970, the ownership of Denthetics was transferred to Healthco along with an assignment of the lease. The trust consented to this assignment. The nature of the business and the personnel remained essentially intact.

On January 30, 1978, Healthco and the trust entered into a new ten-year lease commencing on March 1, 1978. The lease contained the following phrase: "[Lessee] will not assign this Lease . . . without first obtaining on each occasion the consent in writing of the Lessor . . ." The rent was $6.75 per square foot for a monthly total of $3,157.88. The lease restricted use of the premises to dental laboratories, clinical facilities, offices and clerical facilities. Sometime after 1978, the trust assigned its interest in the premises to Epstein and Slotnick as partners in E & S Realty Associates.

On June 25, 1982, Healthco transferred ownership of Denthetics to H & M Laboratory Services, Inc. This transfer, like the previous two, did not involve any changes in personnel or the nature of the business. The transfer also included an assignment of the lease. About one month later, Healthco notified the trust of its assignment to H & M and requested the consent of the trust to the assignment. E & S, as successor to the trust, responded on August 11, 1982, that prior written consent was neither requested nor given, and that Healthco was thereby on notice that it was in default of its lease. On September 13, 1982, E & S wrote to Healthco that E & S considered Healthco

as a tenant at will at a rental of $12 per square foot or $5,614 per month, retroactive to June 25. Ten days later, E & S informed Healthco that due to the nonpayment of the rent previously demanded, Healthco's tenancy was terminated and Healthco was to vacate the premises by October 31, 1982.

Before eviction proceedings began, the plaintiffs, on October 22, 1982, sought a temporary restraining order preventing their eviction and termination of the lease. The order was granted in November, 1982. The dispute was tried in the Superior Court on June 8, 1984. The judge ruled that, despite the absence of any Massachusetts law, the lease in question contained an implied covenant (there was no such expressed covenant) that consent would not be withheld unreasonably. The judge ruled the rent increase unreasonable as a matter of law. The judge further ruled that the consent to the assignments of the prior lease constituted a waiver of any right of E & S to object to the assignment of this lease. Therefore, the judge ruled that the lease remained fully effective and permanently enjoined the defendants from terminating the lease. The defendants appealed and we took the case on our own motion.

The defendants argue that Healthco's failure to obtain prior written consent to the assignment, as the lease expressly required, constituted a breach of the lease. We agree, and therefore we do not address the issue of whether consent was unreasonably withheld.

A clause that prohibits a lessee from assigning a lease without the lessor's consent is intended to protect the lessor's interest in determining the suitability of those to whom the lessor will lease his premises. *68 Beacon St., Inc.* v. *Sohier*, 289 Mass. 354, 360 (1935). Violation of that clause renders the lease voidable by the lessor. *Id.*

Healthco expressly agreed to request E & S's consent before it assigned the lease to a third party. By its own admission, Healthco did not make such a request. Instead, Healthco assigned the lease to H & M. Healthco then presented the defendants with a fait accompli and sought the defendants' ratification of this action. Thus, Healthco deprived the defendants of a

right which was accorded to them by the contract — the right to disapprove beforehand an assignment of the lease. *Tage II Corp.* v. *Ducas (U.S.) Realty Corp.*, 17 Mass. App. Ct. 664, 666 (1984).

Comment g to the Restatement (Second) of Property § 15.2 (1977) squarely addresses this situation: "If a party to the lease proceeds to make a transfer of an interest in the leased property in violation of the restraint on alienation imposed on him without first seeking the other party's consent, the transfer will be in violation of the restraint even though the transferring party might be able to prove that the other party would have had no reasonable basis for objecting to the transfer. The reason for this is that the other party does have a legitimate basis for insisting that at least he know of a contemplated transfer and the restraint on alienation is a method of assuring him he will have such knowledge." A tenant who has violated an unambiguous contractual provision regarding assignment of a lease cannot expect us to ignore his broken promise. We must respect the integrity of contracts into which parties voluntarily and knowingly enter.

The judge also ruled that the prior course of dealing between the parties created an implied obligation to consent to the assignment in this case. In *Aste* v. *Putnam's Hotel Co.*, 247 Mass. 147, 151-152 (1923), we held, consistent with the primordial rule of *Dumpor's Case*, 76 Eng. Rep. 1110 (1578), that when a lease contains a covenant requiring the lessor's prior written consent to an assignment and when that consent is obtained, the lessee is not required to procure the lessor's consent to subsequent assignments. Further consent is unnecessary because once the condition is satisfied it is no longer operative. *Talbot* v. *Rednalloh Co.*, 283 Mass. 225, 235 (1933). *Pennock* v. *Lyons*, 118 Mass. 92, 93 (1875). However, this rule is not decisive of the present case because a new lease was signed in 1978 and we look to the consent provision of that lease, which contains no language about withholding consent unreasonably. Hence, the judge's ruling was erroneous.

The judgment of the Superior Court is reversed and a judgment in favor of the defendants shall enter.

*So ordered.*