## 21 MERCHANTS ROW CORPORATION *vs.* MERCHANTS ROW, INC.[1]

Suffolk. January 6, 1992. - March 11, 1992.

Present: ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Landlord and Tenant,* Assignment of lease, Subletting.

Where a commercial lease did not expressly limit the landlord's discretion in consenting to an assignment or sublease, the landlord had the right, as a matter of law, to refuse consent to an assignment of the lease for any reason. [206-207]

CIVIL ACTION commenced in the Superior Court Department on December 21, 1988.

The case was tried before *Walter E. Steele,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*William F. Griffin, Jr. (Gary S. Matsko* with him) for the defendant.

*Barbara L. Moore (Robert S. Molloy* with her) for the plaintiff.

*Philip S. Lapatin* for Greater Boston Real Estate Board, amicus curae, submitted a brief.

LYNCH, J. The defendant, Merchants Row, Inc., appeals from a jury verdict for the plaintiff, 21 Merchants Row Corporation, awarding $3,000,000 for breach of a lease, as well as $150,000 for interference with contractual relations, and $150,000 for violation of G. L. c. 93A (1990 ed.). We granted the defendant's application for direct appellate review, and we now reverse. The theory of the plaintiff's action was that the defendant wrongfully and unreasonably refused

---

[1]We acknowledge the assistance of the amicus brief filed by the Greater Boston Real Estate Board.

to consent to an assignment of the lease. At the close of the plaintiff's case and after all the evidence, the defendant moved for a directed verdict on the ground that the landlord has a right, as a matter of law, to refuse consent to an assignment of the lease for any reason. The motions were denied, as was the defendant's motion for judgment notwithstanding the verdict.

The following facts are undisputed. The plaintiff entered into a lease with the defendant's predecessor in title in 1974. The lease clause at issue in this action provides, in pertinent part: "Notwithstanding any other provisions of this lease, Tenant covenants and agrees that it will not assign this lease or sublet . . . the whole or any part of the demised premises without in each instance having first received the express written consent of the Landlord." The landlord's discretion in consenting to an assignment or sublease was not expressly limited. The defendant acquired the premises in early 1983. The relationship between the plaintiff and the defendant was acrimonious from its inception.

In the summer of 1987, the plaintiff entered into a purchase agreement for the sale of the plaintiff's business. The sale was contingent on the defendant's consenting to an assignment of the plaintiff's lease.

In April, 1988, after much negotiation and finally litigation, the defendant consented in writing to the assignment of the lease to the buyer, but specifically provided that it was not waiving its rights regarding any future assignments of the lease. The buyer and the plaintiff thereafter requested that the defendant consent to an assignment to the bank through which the buyer was financing the purchase. Such assignment gave the bank the absolute right to further assign the lease without the landlord's consent. The defendant objected to this loss of control over its property. The defendant refused to sign the bank's form of assignment. The plaintiff commenced this action arguing that the defendant unreasonably withheld its consent to the assignment of the lease.

At issue, therefore, is whether, in a commercial lease, the requirement that the tenant must obtain the landlord's con-

sent before assigning the lease implies, as a matter of law, an obligation on the landlord's part to act reasonably in withholding consent. We conclude that a landlord is not so obligated.

In *Slavin* v. *Rent Control Bd. of Brookline*, 406 Mass. 458 (1990), we held that a reasonableness requirement would not be implied in the assignment clause of a residential lease. We noted there that "[a] majority of jurisdictions subscribe to the rule that a lease provision requiring the landlord's consent to an assignment or sublease permits the landlord to refuse arbitrarily or unreasonably." *Id.* at 461. Practitioners and authors have assumed this to be the rule in Massachusetts. See E.L. Schwartz, Lease Drafting in Massachusetts § 9.3 n.1, at 413 (1961) ("The lessor may, of course, arbitrarily refuse consent"). See also M.R. Friedman, Leases § 7.304a, at 297 (3d ed. 1990) ("An absolute prohibition against assignment and subletting has traditionally authorized a landlord to refuse permission for any reason or no reason"), and *id.* at § 7.304a n.3, at 298 (citing *Healthco, Inc.* v. *E & S Realty Assocs.*, 400 Mass. 700 (1987), a "landlord may condition consent in rent increase");[2] L.S. Lakin, Other Methods of Acquiring Interests in Real Estate, Essential Real Estate Practice and Procedure, MCLE II-111 — II-112 (1976); Annot., When Lessor May Withhold Consent Under Unqualified Provision in Lease Prohibiting Assignment or Subletting of Leased Premises Without Lessor's Consent,. 21 A.L.R. 4th 188 (1983 & Supp. 1991). But see Restatement (Second) of Property § 15.2 (2) & reporter's note 1 (1977). We see no sound reason to depart from this rule and to grant greater protection in this regard to commercial tenants than that afforded to residential tenants, especially since we and other jurisdictions see no rational distinction between residential and commercial leases in this regard. See *Schweiso* v.

---

[2]We note that we did not reach the issue whether consent was, or could be, unreasonably withheld in *Healthco, Inc.* v. *E & S Realty Assocs.*, 400 Mass. 700 (1987). There we decided that Healthco's failure to obtain prior written consent to an assignment, as the lease expressly required, constituted a breach of the lease. *Id.* at 702-703.

*Williams*, 150 Cal. App. 3d 883, 886 n.3 (1984); *Fernandez* v. *Vazquez*, 397 So. 2d 1171, 1174 n.8 (Fla. Dist. Ct. App. 1981).

Since the bargaining power of commercial tenants at the lease drafting stage is ordinarily greater than that of residential tenants, logic would indicate that, if we were to differentiate between residential and commercial leases, we would do so in favor of residential rather than commercial tenants. As we said in *Slavin*, "[t]he question is one of public policy, which, of course, the Legislature is free to address." *Slavin* v. *Rent Control Bd. of Brookline*, *supra* at 463.

*Judgment reversed.*