Rutberg, J.
Sophie Kozaczka (“Kozaczka”) opened a convenience store in Worcester in 1995, and signed a written lease for one year with General Realty Corporation (“General Realty”). The lease required Kozaczka to pay a monthly rent of $1,000.00, plus utilities, and it provided for its automatic renewal annually. In August, 1999, Kozaczka transferred her business to her daughter, Lisa Ansara (“Ansara”), but neither Kozaczka, nor Ansara, attempted formally to assign the leasehold to Ansara. Ansara continued to operate the store at the same location through the summer of 2002, when she negotiated the sale of her business to an unrelated third party who insisted on a formal assignment of the lease. When Ansara approached Myron Katz (“Katz”), General Realty’s principal officer, he refused to assent to the assignment unless Ansara agreed to pay the estimated, accumulated utility charges incurred for the premises since Kozaczka first occupied.
Eventually, Ansara paid the sum demanded by Katz and completed the sale of her business. After the transaction was completed, Ansara commenced this action against General Realty and Katz alleging breach of contract, tortious interference with contractual relations, and violation of G.L.c. 93A’s proscription of unfair trade practices. The trial judge found for Ansara against both defendants on the counts *144 alleging interference with advantageous relations and violation of G.L.c. 93A, from which both defendants have appealed. Ansara did not appeal the entry of judgment for the defendants on the count alleging breach of contract.
While defendant Katz made written requests for rulings pursuant to Mass. R. Civ. R, Rule 64A, defendant General Realty proffered no such request. Generally, we will not review actions taken by a trial court absent requests for rulings of law. Bottone v. DeFreitas, 2006 Mass. App. Div. 57, 58; F & G Pasqualucci, LLC v. Global Naps Realty, Inc., 2004 Mass. App. Div. 69, 70. Defendant Katz’ requests are largely factual and do not indicate whether a particular requested ruling is that the evidence “warrants” such a finding or rather “requires” it. As presented, these requests are not in compliance with Rule 64A, which provides, inter alia, that “[ejach request shall concisely present a single issue of law. ...” We deem Katz’ final request[2] to be that the evidence requires a finding for the defendant. As this request was denied by the trial judge, our reading of the request resolves any ambiguity on behalf of Ansara.
Tortious interference with contractual relations requires the plaintiff to prove four elements: “(1) the existence of a contract or business relationship ..; (2) the defendants’ knowledge of the contract or business relationship; (3) the defendants’ intentional interference with the contract or business relationship for an improper purpose or by an improper means; and (4) damages.” Swanset Develop. Corp. v. Taunton, 423 Mass. 390, 397 (1996), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 815-817 (1990). Notwithstanding the trial judge’s assertion that the defendants’ conduct “was more scurrilous than is usually found in the hurly, burly commercial market place,” there is a dearth of evidence in the record which would allow such a conclusion to be supported. “[Sjomething more than intentional interference is required.” Id. at 815. There is no evidence in the record that either defendant acted for an improper purpose or by an improper means.
The written lease between Kozaczka and General Realty did not allow its assignment without General Realty’s consent, and the lease put no restrictions on General Realty’s denying or withholding such consent. Ansara approached General Realty through Katz in the summer of 2002 in her attempt to obtain the assignment of her leasehold to the prospective buyer. By the time Ansara sought the assignment, she had entered into a written agreement with her buyer that called for its closing on September 1,2002. On August 22, Katz wrote to Ansara that General Realty would not allow her purchaser to occupy the premises unless Ansara paid $8,437.74, which represented the unpaid utility charges described above.
Katz’ demand for payment, albeit on behalf of General Realty, did not cause Ansara to lose the contractual rights she had with her buyer; indeed, her transaction was completed in a timely manner. The loss, if any, sustained by the plaintiff was the sum she paid to obtain General Realty’s assent to the leasehold assignment. When a landlord reserves an absolute prohibition against assignment, Massachusetts courts allow that landlord to refuse permission to assign “for any reason or no reason” at all. 21 Merchants Row Corp. v. Merchants Row, Inc., 412 Mass. 204, 206 (1992). As a result, the demand of either Katz or General Realty for payment in return for the grant of permission which could have been withheld for any reason whatsoever cannot constitute evidence of either an improper purpose or an improper means as required by United Truck Leasing Corp. v. Geltman, supra, at 816.
As there is no evidence in the record of an essential element of the claim of interference with contractual relations, the evidence required the trial judge to find for defendant Katz on that claim of the plaintiff’s complaint.
*145 Ansara’s claim that the demand for payment constituted an unfair trade practice required her to prove, inter alia, that Katz committed such a practice. G.L.c. 93A, §11. The trial judge found Katz’ behavior was “scurrilous,” and we will not set this finding aside unless it is clearly erroneous. Johnson v. Modern Continental Constr. Co., 49 Mass. App. Ct. 545, 547 (2000). This ultimate finding or characterization is not grounded upon subsidiary factual findings or evidence that would support such a conclusion, and the trial court record is devoid of evidence which would allow for any such subsidiary finding. To the extent that Katz delayed granting consent to the leasehold assignment until Ansara made a large payment, such activity cannot be an unfair or deceptive practice when the activity is allowed by Massachusetts case law. The mere exercise of legitimate economic leverage in a commercial transaction is not in and of itself an unfair trade practice. Therefore, we must set aside the ultimate finding that Katz committed an unfair trade practice as it is clearly erroneous. Yankee Microwave, Inc. v. Petricca Communications Systems, Inc., 53 Mass. App. Ct. 497, 504 (2002).
The decision of the trial court with respect to defendant Myron Katz is reversed, and this reversal further requires reversal of the trial court’s decision with respect to the co-defendant, General Realty Corporation.
So ordered.

 “16. Upon all the evidence, the Defendants should be found not liabile [sic] to the Plaintiff.”